**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WHITNEY NATIONAL BANK, | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-06-1492 |
| MEDICAL PLAZA SURGICAL CENTER L.L.P., *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

Whitney National Bank ("Whitney Bank") filed this suit to recover amounts owing under promissory notes and guaranty agreements executed by the defendants, Medical Plaza Surgical Center L.L.P. ("Medical Plaza") and eight individuals, Richard Crouse, David Janowitz, Benny J. Sanchez, Duy Bui, Clifford Kirby, Melinda Andress, Jose Guajardo, and Anthony La Marra. (Docket Entry No. 1). The suit arises out of a loan by Whitney Bank to finance a medical facility owned by a limited partnership, the Medical Plaza Surgical Center, L.L.P. Two of the individual defendants who invested in the limited partnership and who signed personal guarantees of the Whitney Bank loan, Bui and Guajardo, filed counterclaims against Whitney Bank alleging fraud and civil conspiracy. (Docket Entry Nos. 28, 30). Whitney Bank has moved to dismiss Bui and Guajardo's counterclaims under Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Docket Entry No. 36). Bui and Guajardo responded, (Docket Entry No. 37), and Whitney replied. (Docket Entry No. 43). After this court raised

questions as to the basis for the allegation that Whitney Bank could be liable on an agency theory for the acts and omissions of the individual who promoted the limited partnership to Bui and Guajardo and arranged for them to guarantee the loan, both sides supplemented their filings. (Docket Entry Nos. 47, 48).

Based on a careful review of the motion, the responses, and replies, the record, the arguments of counsel, and the applicable law, this court grants Whitney Bank's motion to dismiss the counterclaims asserted by Bui and Guajardo. (Docket Entry No. 36). The reasons are set out below.

**I.     Background**

Bui and Guajardo allege that defendant Clifford Kirby was one of the owners of Life Care ASC Management, L.L.P. ("Life Care"), which solicited investments in the Medical Plaza Surgical Center limited partnership to own and operate a medical facility in Houston, Texas. Life Care would operate the facility and maintain a 15% ownership. Life Care would receive a share of the partnership profits and would pay Kirby a management fee. (Docket Entry No. 30 at 4–5; Docket Entry No. 28 at 4–5).

Bui and Guajardo allege that Kirby approached them and urged them to invest in 2004, after efforts to sell the last five partnership units had been unsuccessful. Bui and Guajardo are chiropractors and could not use the planned facility for medical procedures. Bui and Guajardo allege that Kirby made a number of misrepresentations to induce them to invest in the limited partnership, including misrepresentations as to the identity of other investors and the nature of the risk involved. According to Bui and Guajardo, Kirby

provided them a document entitled "Medical Plaza Surgical Center, LLP Summary of Units Sold and Potential Prospects as of January 2004." (Docket Entry No. 28 at 5; Docket Entry No. 30 at 5). Bui and Guajardo allege that the document did not "differentiate between investors who had purchased units and those who merely potential investors" and that in the document and in conversations, Kirby told them that certain individuals who had not invested in the partnership were investors. (Docket Entry No. 28 at 6; Docket Entry No. 30 at 6). Bui purchased three partnership units for $45,000, and Guajardo purchased two units for $30,000. (Docket Entry No. 28 at 7; Docket Entry No. 30 at 7). At the end of April 2004, Kirby "had each partner borrow $50,000 from Frost Bank and provide the cash to Medical Plaza." (*Id.*).

In May 2004, Kirby allegedly told Bui and Guajardo that he had "prevailed upon Whitney Bank to re-finance the $50,000 individual loans from Frost Bank into a $410,000 loan to Medical Plaza" and that the refinancing was a "better deal" because it would reduce their individual risk. (*Id.*). Bui and Guajardo allege that the refinancing from Whitney Bank instead increased their exposure because they included an additional $500,000 loan to Medical Plaza. (*Id.*).

Whitney Bank had issued three notes to Medical Plaza: a $925,000 note, a $370,000 note, and a $100,000 note. Medical Plaza defaulted on February 28, 2006. Whitney Bank alleges that the individual defendants, including Bui and Guajardo, guaranteed the $925,000 note and the $370,000 note, and that all individual defendants except La Marra guaranteed the $100,000 note. (Docket Entry No. 1).

Bui and Guajardo acknowledge that they did not talk to any Whitney Bank representative before they signed the loan documents, including the personal guarantees. They allege that when Kirby brought them the Whitney Bank loan documents to sign, he did so as Whitney Bank's agent. "[Bui and Guajardo] never met any officer of Whitney Bank prior to executing the bank documentation presented to [them] by Kirby, Whitney Bank's agent." (Docket Entry No. 28 at 8, Docket Entry No. 30 at 8). Bui and Guajardo allege that because Life Care undercapitalized and mismanaged Medical Plaza, it was not able to operate profitably and could not repay the Whitney Bank loans.

Bui and Guajardo counterclaimed in this collection suit, alleging fraud and civil conspiracy to commit fraud in their execution of the loans and personal guaranties. (Docket Entry Nos. 28, 30). Whitney Bank has moved to dismiss Bui and Guajardo's counterclaims under Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Docket Entry No. 36).

## II.     The Applicable Legal Standards

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Rule 9(b) pleading requirements apply to state-law claims of fraud. *Williams*, 112 F.3d at 177.

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) dismissal is appropriate only if there is no set of facts that could be proven consistent with the complaint allegations that would entitle the plaintiff to relief. *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Id.; Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  To avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  A court "will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).  Unlike a summary judgment motion, a Rule 12(b)(6) motion "only tests whether the claim has been adequately stated in the complaint." *Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 220 (5th Cir. 1998).  "Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *General Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir. 1999).  In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments.  *Collins*, 224 F.3d at 498.

**III.    Analysis**

5

Whitney Bank argues that Bui and Guajardo's counterclaims are "bare bones allegations which do not identify any fraud by Whitney, and which do not state a claim for civil conspiracy." (Docket Entry No. 36 at 2). Bui and Guajardo acknowledge that the only basis for holding Whitney Bank liable for fraud and civil conspiracy is the allegation that Kirby acted as Whitney Bank's agent. Whitney Bank moves to dismiss the counterclaims on the basis that Bui and Guajardo have failed to plead Kirby's alleged agency relationship with the particularity required by Rule 9(b) and that the fraud and conspiracy claims fail as a matter of law. (*Id*. at 4–5).

Bui and Guajardo have described the facts on which they base their agency contention. "Whitney Bank provided the loan documents that Whitney Bank wanted the Defendants to sign to Kirby. . . .Whitney Bank, by providing the loan documents that Defendants needed to sign to Kirby, permitted Kirby to hold himself out as having authority to act on behalf of Whitney Bank to obtain Defendants [sic] signatures." (Docket Entry No. 37 at 8). The issue is whether these allegations would meet the pleading requirements.

A number of courts have held that when agency is an element of a fraud claim, agency must be pleaded with the particularity required under Rule 9(b). In *Kolbeck v. LIT America, Inc.*, the court stated as follows:

> Plaintiffs base their theory of agency by estoppel on Schindler's statements made in either Alpert's or Michael Rose's presence, statements which they characterize as lies in furtherance of a conspiracy to defraud, and statements which plaintiffs themselves are in the best position to recount. By structuring their claim in this way, plaintiffs have assumed responsibility

6

> not only to plead the underlying fraud, but also the fraudulent agency, with Rule 9(b) particularity.

923 F. Supp. 557, 570 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998). In *American Credit Union v. HCG Financial Servs, Inc.*, the court similarly required the allegations of agency used to impute the alleged agent's fraud to the alleged principal to meet the pleading standards under Rule 9(b):

> Here, no specific allegations are directed at Hartford Financial Corporation or Hartford Computer Group. ACI merely alleges, based upon information and belief, that the acts of Hartford Computer Group and HCG were undertaken at the "direction and control" of Hartford Financial Corporation and that Hartford Computer Group and HCG acted as "agents" of Hartford Financial Corporation in a "common scheme." (¶ 3.) These conclusory allegations fail to satisfy Rule 9(b).

1990 WL 77992, at *4 (N.D. Ill. June 1, 1990). Other courts have reached similar conclusions when the pleading alleges that a party is liable for an alleged agent's fraud. *See Chou v. University of Chicago*, 254 F.3d 1347, 1362 (Fed. Cir. 2001) ("We do not agree, however, that Chou's allegations concerning Aviron's liability under agency principles for Roizman's alleged fraudulent nondisclosure meet the requirement of Fed.R.Civ.P. 9(b) to plead fraud with particularity."); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 916 (8th Cir. 2001) (upholding the district court's assumption that "a plaintiff seeking to hold a principal liable for an agent's fraud must plead not only fraud but also agency with particularity"); *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) ("[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that

animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim.").

In this case, Bui and Guajardo do not allege that Whitney Bank committed any fraudulent act or made any fraudulent statement apart from Kirby's acts and statements. The only basis to find Whitney Bank liable is by imputing Kirby's liability as Whitney Bank's agent. Bui and Guajardo must plead with the particularity required under Rule 9(b) facts showing that when Kirby had Bui and Guajardo sign the Whitney Bank loan and guaranty documents, Kirby acted as Whitney Bank's actual or apparent agent. *Lachmund*, 191 F.3d at 783. Bui and Guajardo have clearly failed to meet this standard. Instead, they conclusorily allege that when Kirby brought Whitney Bank loan documents to Bui and Guajardo he did so as Whitney Bank's agent. In their brief in response to the motion to dismiss, Bui and Guajardo acknowledge that the only fact they could allege to support their allegation of agency between Kirby and Whitney Bank is that Whitney Bank gave Kirby loan documents to take to Bui and Guajardo to sign, creating apparent agency.

Bui and Guajardo cite *Nationsbank v. Drilling*, 922 S.W.2d 950 (Tex. 1996), to support the sufficiency of their counterclaim against Whitney Bank based on Kirby's alleged agency relationship. In *Nationsbank*, a bank teller issued cashier's checks without the bank's approval, in furtherance of a private scheme. The Texas Supreme Court reversed the appellate court's finding that the teller's actions were "clothed with [the bank's] apparent authority." *Id.* at 952. "To establish apparent authority, one must show that a principal either knowingly permitted an agent to hold itself out as having authority or showed such lack of

8

ordinary care as to clothe the agent with indicia of authority. A court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority." *Id.* at 952–53. "One seeking to charge a principal through the apparent authority of its agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that it purports to exercise." *Id.* at 953. A similar result was reached in *First Valley Bank v. Martin*, 144 S.W.3d 466 (Tex. 2004). In that case, a Texas appeals court found that a bank had shown "ostensible acquiescence" to a bank director's involvement with a borrower's loan. The Texas Supreme Court reversed because there "was no proof that the bank authorized this director to do anything" on the loan and "apparent authority is limited to the scope of responsibility that is apparently authorized." 144 S.W.3d at 471.

In their counterclaims and in the response to the motion to dismiss, Bui and Guajardo have not alleged facts that could show that Kirby was Whitney Bank's agent. There is no allegation of any Whitney Bank action that would suffice for apparent agency; actual agency is neither alleged nor argued. As in *Nationsbank*, there is no allegation that Whitney Bank took an action or failed to take an action that would lead a reasonably prudent person to believe it had authorized Kirby to act on Whitney Bank's behalf. Bui and Guajardo argue that they had reason to believe that Kirby was authorized to "explain the Whitney Bank credit facility," to "request that the Defendants guaranty the repayment," and to "obtain Defendants [sic] signatures." (Docket Entry No. 37 at 8). Bui and Guajardo's pleadings at most allege that Kirby had apparent authority to present Whitney Bank loan documents for

signature, not to bind Whitney Bank to Kirby's representations about the nature or extent of the risk. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 668, 671 (Tex. 1998) ("We conclude that Ace's and Gunnels's actual and apparent agency authority on behalf of INA extended only to representations concerning the insurance product and not also the investment product.").

Because Kirby's alleged apparent agency relationship with the Whitney Bank is the only basis for alleging that Whitney Bank is liable for fraud, that agency relationship must be pleaded with particularity under Rule 9(b). Bui and Guajardo have not met that standard. Whitney Bank's motion to dismiss the fraud counterclaims is granted.

Bui and Guajardo also allege that Whitney Bank is liable for civil conspiracy. "To establish a claim for civil conspiracy in Texas, a plaintiff must show: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful, overt acts; and (5) proximate damages." *Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 530 (5th Cir. 2004). Under Texas law, civil conspiracy is a "derivative tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Id.*

The underlying tort in this case is fraud. Neither the fraud claim nor the conspiracy claim is pleaded adequately under Rule 9(b) and neither state a claim on which relief can be granted. Both are dismissed.

**IV.    Conclusion**

This court grants Whitney Bank's motion to dismiss. (Docket Entry No. 36). By **February 16, 2006**, Bui and Guajardo may file amended pleadings to attempt to meet the pleading deficiencies, consistent with the elements of apparent agency under Texas law and Rule 11 of the Federal Rules of Civil Procedure.

SIGNED on February 1, 2007, at Houston, Texas.

　　　　　　　　　　　　　　　　　　Lee H. Rosenthal
　　　　　　　　　　　　　　　　　　United States District Judge